United States District Court
Eastern District of New York                                  1:19-cv-00004

| |
|---|
| Romel Hightower individually and on behalf of all others similarly situated<br><br>        Plaintiff<br><br>    - against -<br><br>Beyond Better Foods, LLC<br><br>        Defendant |

                              Complaint

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Beyond Better Foods, LLC ("defendant") manufactures, markets and distributes frozen dairy desserts under the "Enlightened" brand, sold to consumers by third-parties from brick-and-mortar stores and online.

2. The common front label representations include the brand, "The Good-For-You Ice Cream," flavor, calories per serving, "More Protein. Less Sugar," and "1 Pint Light Ice Cream."



1

3. People enjoy ice cream, a kind of frozen dairy dessert, due to its sensory attributes, like its rich sweet flavor, smooth, creamy texture and a cold sensation that is distinct from the warmth of most other foods.

4. Until the 1990s, any product with "ice cream" in its name had to meet requirements, related to key ingredients (i.e., dairy), non-ingredients (performance characteristics such as physical properties like texture, melting point, freezing point, flavor (e.g., aroma and taste), functional properties (e.g., body, spreadability, and shelf life) and a minimum percent of milkfat.[1]

5. If the product had less than 10% milkfat, it was required to be named "ice milk."

6. However, acting at the direction of Congress, the FDA enabled regulations allowing for modified versions of standardized foods, by permitting an express nutrient content claim to precede a standardized food's name, essentially creating new standards of identity.[2]

7. An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, such as calories or fat.[3]

8. Products were now permitted to be named "ice cream," modified with an express nutrient content claim relating to the characterizing ingredient of milk fat.

9. The expressed nutrient content claims were (1) reduced fat, having 25% less fat than a reference product,[4] (2) light, a 50% reduction in total fat from the reference product, or one-third reduction in calories if fewer than 50% of the calories are from fat,[5] (3) low fat, having not more than 3 g of total fat per serving[6] and (4) nonfat or fat free, with less than 0.5 g of fat per serving.[7]

---

[1] 21 C.F.R. § 135.110
[2] 21 C.F.R. § 130.10
[3] 21 C.F.R. § 101.13
[4] 21 C.F.R. § 101.62(b)(4)
[5] 21 C.F.R. § 101.56
[6] 21 C.F.R. § 101.62(b)(2)
[7] 21 C.F.R. § 101.62(b)(1)

2

10. Modified versions of standardized foods were required to be equivalent from a nutritional and performance standpoint with respect to the standardized food.[8]

11. Adjustments to the composition and structure of the standardized food were permitted, but only in the minimum amount necessary to qualify for the nutrient content claim while maintaining similar performance characteristics (i.e., moisture or solids content).[9]

12. These adjustments allowed for incorporation of new types of ingredients since it was expected manufacturers would face challenges in compensating for the removal of milkfat.

13. Each ingredient added in a modified, standardized food like ice cream was required to perform an appropriate function, such as improving texture, adding flavor, extending shelf life and improving appearance.[10]

14. If there was an ingredient or component of an ingredient specifically required by the standard, it was not permitted to be replaced or exchanged with a similar ingredient from another source unless the standard specifically allowed it.[11]

15. The most significant challenge involved replacement of milkfat since this is the most important and significant (in amount and effect) ingredient in ice cream.

16. Milk fat increases the richness of flavor because most flavors are fat soluble and produces a characteristic smooth texture by lubricating the palate and gives body to the ice cream,

17. Milk fat produces desirable melting properties, because it inhibits the formation of large ice crystals.

18. This impacts the ice cream's shelf life because its moisture content may increase significantly with the reduction of fat, which can lead to the formation of large ice crystals because

---

[8] 21 C.F.R. § 130.10(b)
[9] 21 C.F.R. § 130.10(c)
[10] 21 C.F.R. § 130.10(d)(1)
[11] 21 C.F.R. § 130.10(d)(2)

3

the higher level of free moisture makes the product less freeze-thaw stable.

19.  Fat reduction is challenging because as fat is removed from ice cream, other ingredients must be added to keep the water content within reasonable limits.

20.  Too much water means too much ice in the product, resulting in it being excessively hard, cold and icy with weak body and poor keeping quality.

21.  To reduce fat content below 5% while maintaining performance characteristics to meet consumer expectations with respect to resemblance of traditional ice cream, milkfat needs to be replaced with another ingredient.[12]

22.  These ingredients are referred to as "fat replacers," a broad term including ingredients that perform the following, non-exclusive functions:

- Fat substitute or analog: used to replace fat on a weight-by-weight basis due to having characteristics of fats but with fewer or no calories;

- Fat mimetic: replace part of the fat of a product and can imitate at least one but not all functions of fat in a food, but this requires a high-water content; and

- Fat extender: used to reduce the concentration of fats by replacing them with a standard lipid combined with other ingredients.

23.  Maltodextrin, a class of corn starch ingredients with a dextrose equivalent ("DE") <20, can be used as a sweetener or fat replacer in ice cream, depending how it's modified.

24.  One of these modified starches is also known as soluble corn fiber, listed fifth in the ingredient list and constituting 20% of the Product, or 5g, according to the nutrition facts.

---

[12] 21 C.F.R. § 130.10(d)(5); 21 C.F.R. § 130.10(c), (d)(1)-(2).

**Nutrition Facts**
Serving Size: 1/2 cup (69g)
Serving Per Container: 4

**Amount Per Serving**
Calories: 80    Cal from Fat 25

| | % Daily Value* |
|---|---|
| **Total Fat** 2.5g | 4% |
| Saturated Fat 1.5g | 8% |
| Trans Fat 0g | |
| **Cholesterol** 10mg | 3% |
| **Sodium** 95mg | 4% |
| **Total Carbohydrate** 17g | 6% |
| Dietary Fiber 5g | 20% |
| Sugars 5g | |
| Erythritol 4g | |
| **Protein** 6g | 12% |
| Vitamin A 2% | Vitamin C 0% |
| Calcium 15% | Iron 0% |

*Percent Daily Values are based on a 2,000 calorie diet.

**8 NET CARBS (ERYTHRITOL HAS NO CALORIES OR EFFECT ON BLOOD SUGAR)**

**INGREDIENTS:** SKIM MILK, MILK PROTEIN ISOLATE, ERYTHRITOL (NATURAL SWEETENER), NON-GMO SOLUBLE CORN FIBER, UNBLEACHED WHEAT FLOUR, CREAM, CANE SUGAR, CONTAINS 2% OR LESS OF: VEGETABLE GLYCERIN, PALM OIL, DUTCHED COCOA, VANILLA, CAROB GUM, GUAR GUM, MONK FRUIT EXTRACT, SALT, BAKING SODA, SOY LECITHIN, NATURAL FLAVOR.

25. At DE <10, maltodextrin functions as a fat replacer because it provides solids without adversely affecting the freezing point of the ice cream mix, and forms a gel which imparts a creamy mouthfeel, contributing to the texture and chewiness of ice cream.

26. These functions – viscosity enhancement, emulsion stabilization and freeze/thaw protection – are typically provided by milkfat, but are instead provided by the soluble corn fiber (modified maltodextrin) present in the products.

27. That the maltodextrin is used for its fat-replacing qualities instead of for sweetening is evident from the sweetening agents present in the Products – erythritol and cane sugar, the fourth and seventh ingredients listed in order of predominance.

28. Suppliers of soluble corn fiber have promoted these attributes, stating that ice cream "can be made low-fat or no-fat by reducing or replacing the milk fat" with this ingredient, so that "The body and creamy texture of the ice cream will be preserved, along with a clean taste, and

5

little or no impact on sweetness. Additionally, the freezing point is not affected, and it helps to control large ice crystal formation."[13]

29. Though soluble corn fiber may have functional advantages over other ingredients used to replace the fat content of ice cream, its use in the present amounts renders the representations as "low fat ice cream" false, misleading and deceptive.

30. This is because the characterizing ingredients of ice cream, even in low fat or light varieties, are required to be derived from dairy sources.

31. By using ingredients to simulate the effects of fat in ice cream, which are derived from a non-dairy source (vegetables), the fundamental dairy character of the food is changed such that reasonable consumers receive a product that does not conform to their expectations.[14]

32. Consumers are misled because they expect ice cream to be a dairy product and possess attributes of such a product.

33. In allowing for light and low-fat ice cream, the FDA's intention was to allow for "suitable" ingredients to be used and not was not to allow for the replacement or exchange of fat with a functionally similar ingredient from sources not provided by the standard.[15]

34. The purpose behind limiting the use of fat analogs to those appropriate for the particular product is to limit deviations from the standardized products to those reductions strictly necessary to reduce fat while maintaining all other characteristics of the food.

35. Even if soluble corn fiber was permitted as a fat replacer, it is present in an amount exceeding that which is necessary to perform that function.

36. The Products are also misleading because they are represented as "ice cream" by the

---

[13] PreparedFoods.com, June 1, 2009.
[14] 21 C.F.R. § 130.10(d)(2)
[15] 21 C.F.R. § 130.10(d)(1)

phrase "The Good-For-You Ice Cream" prominently on the front label beneath the brand name, even though they purport to be low-fat or light ice cream, not withstanding the non-dairy fat replacers.



37. The "low fat ice cream" and "light ice cream" identity statements are misleading because they are not one of the principal features on the front label, not in bold type, are not in a size reasonably related to the most prominent text on the front label and are not in a line generally parallel to the base of the package.[16]

38. The use of "light" and "low fat" to identify the Products is a "relative claim" because it characterizes the caloric and/or fat content of the food compared to an appropriate reference

---

[16] 21 C.F.R. § 101.3

7

food.[17]

39. The relevant reference food must be indicated immediately adjacent to the most prominent claim on the front label.[18]

40. The purpose of these requirements is to prevent consumers from being deceived as to what they are purchasing.

41. The Products do not comply with these requirements because "low fat ice cream" and "light ice cream" are (1) present in a miniscule font, (2) off to the lower right of the label, away from the brand name and flavor, (3) in a color pattern which causes difficulty clearly seeing based on the background color, (4) in an area of the container prone to obstruction by ice or condensed water and (5) no reference foods are indicated next to the "low fat ice cream" and "light ice cream" text, nor anywhere else on the label.

42. By promoting its Products as "ice cream" and not distinguishing the purported product from its modified versions, reasonable consumers and plaintiff are not aware they are purchasing a purported modified ice cream product.

43. Reasonable consumers are accustomed to seeing prominent and legally required declarations on competitor products, located in the same freezer section where defendant's Products are, that a product is a light or low-fat ice cream, where that product does not comply with the standard of identity for "ice cream."

---

[17] 21 C.F.R. § 101.56
[18] 21 C.F.R. § 101.13

 

44. Further, the representations are false and misleading because the ingredient list gratuitously and unlawfully describes erythritol as a "Natural Sweetener" in parentheses.

45. Erythritol may exist naturally in select fruits and vegetables, though it is commercially produced from sugars and starch.

46. Reasonable consumers, the FDA, and Congress, understand "synthetic" to be a synonym for "artificial."

47. "Synthetic" is commonly defined as refer to a substance that is formulated or manufactured through a chemical process or intervention which chemically alters a substance extracted from naturally occurring sources, such as plants, animals, or minerals, excluding substances created by naturally occurring processes.

48. Though erythritol *can be* produced through fermentation – a natural process – of glucose, its commercial production entails fermenting glucose derived from enzymatic hydrolysis of wheat or corn with trichosporonoides megachiliensis.

49. After the fermentation process is complete, the broth is heated to kill the production

organism, dead cells are filtered out and the erythritol is separated.

50. The erythritol is then purified by ion exchange resin, activated charcoal, ultrafiltration and crystallization, resulting in a fine crystalline version of erythritol.

51. The result is an ingredient which cannot claim to be "natural."

52. Excluding tax, the Products cost no less than $5.99, a premium price compared to other similar products.

## Jurisdiction and Venue

53. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

54. Plaintiff is a citizen of this State.

55. Defendant is a Delaware limited liability company and upon information and belief, at least one member is not a citizen of New York.

56. Diversity of parties exists because a limited liability company has the citizenship of each of its members, including those who would not be citizens of this State.

57. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

58. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

59. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

60. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

61. The classes consist of all consumers in the following states: <u>all</u>, <u>New York</u> who purchased any Products with actionable representations during the statutes of limitation.

62. A class action is superior to other methods for fair and efficient adjudication.

63. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

64. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

65. Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

66. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

67. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

68. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

69. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

70. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

Parties

71. Plaintiff is a citizen of Queens County, New York.

72. Defendant is a Delaware limited liability company with its principal place of business in The Bronx, New York.

73. In 2016, 2017 and/or 2018, plaintiff purchased one or more of the Products for personal consumption, for no less than $5.99 per product, excluding tax, within this district and/or State.

74. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

75. Plaintiff would purchase the Products again if there were assurances that the Products' representations were no longer misleading.

## New York General Business Law ("GBL") §§ 349 & 350

76. Plaintiff incorporates by references all preceding paragraphs.

77. Defendant's representations are false, unfair, deceptive and misleading

78. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

79. Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type

80. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

## Negligent Misrepresentation

81. Plaintiff incorporates by references all preceding paragraphs.

82. Defendant misrepresented the composition of the Products.

83. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

84. This duty is based, in part, on defendant's affirmative claim that the Products were a form of ice cream ("Good-For-You Ice Cream") when (i) the Products do not fit within the expectations and requirements for any kind of ice cream and (ii) to the extent the Products may be considered a type of ice cream, the disclosure that they are "light" ice cream is presented in a misleading and deceptive manner.

85. Defendant negligently misrepresented and/or negligently omitted material facts.

86. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

87. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

88. Plaintiff incorporates by references all preceding paragraphs.

89. Defendant manufactures and sells Products which purport to be ice cream yet is not ice cream and to the extent it is ice cream, is a modified low fat or light ice cream.

90. The Products, by their representations as a form of ice cream, warranted to plaintiff and class members that they contained ingredients suitable for inclusion, which means the most important element – milkfat – would not be replaced with ingredients derived from a non-dairy source, *viz*, vegetables (soluble corn fiber).

91. Defendant warranted such attributes to plaintiff and class members, when this was not truthful and was misleading.

92. Defendant owed a special duty based on its special knowledge in the frozen dessert sector, to represent all of the facts, instead of only those which would be viewed favorably.

93. The Products did not conform to their affirmations of fact and promises, wholly due

to defendant's actions.

94. Plaintiff and class members relied on defendant's claims, paying more than they would have.

### Fraud

95. Plaintiff incorporates by references all preceding paragraphs.

96. Defendant's purpose was to mislead consumers who seek traditional foods that maintain many attributes of full fat alternatives yet with less fat and calories.

97. Defendant's intent was to secure economic advantage in the marketplace against competitors.

98. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

### Unjust Enrichment

99. Plaintiff incorporates by references all preceding paragraphs.

100. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated: January 1, 2019

        Respectfully submitted,

        Sheehan & Associates, P.C.
        /s/Spencer Sheehan
        Spencer Sheehan (SS-8533)
        505 Northern Blvd., Suite 311
        Great Neck, NY 11021
        (516) 303-0552
        spencer@spencersheehan.com

        Levin-Epstein & Associates, P.C.
        Joshua Levin-Epstein
        1 Penn Plaza, Suite 2527
        New York, NY 10119
        (212) 792-0046
        joshua@levinepstein.com

1:19-cv-00004
United States District Court
Eastern District of New York

Romel Hightower individually and on behalf of all others similarly situated

                                      Plaintiffs

    - against -

Beyond Better Foods, LLC

                                      Defendant(s)

## Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: January 1, 2019

                                                                       /s/ Spencer Sheehan
                                                                           Spencer Sheehan